GLITTENBERG v DOUGHBOY RECREATIONAL INDUSTRIES
(ON REHEARING)

SPAULDING v LESCO INTERNATIONAL CORPORATION

HOREN v COLECO INDUSTRIES

Docket Nos. 85391, 88429, 88580. Argued October 8, 1991 (Calendar
    Nos. 1-3). Decided September 29, 1992. Rehearings denied in
    *Spaulding* and *Horen, post,* 1202.

The plaintiffs in these cases brought actions against manufactur-
    ers of aboveground swimming pools and pool owners after each
    plaintiff husband was permanently paralyzed as a result of
    diving into the respective pools.

David and Connie Glittenberg brought an action in Jackson
    Circuit Court against Doughboy Recreational Industries and
    others, alleging in pertinent part that the defendants' negligent
    failure to warn of the grave risk of paralysis or death inherent
    in diving into an aboveground pool resulted in serious and
    permanent injury. The court, Gordon Britten, J., granted sum-
    mary disposition for Doughboy on the ground that the swim-
    ming pool was a simple product, the hazards of diving into its
    shallow water were open and obvious, and thus Doughboy had
    no duty to warn. The Court of Appeals, MAHER, P.J., and
    SHEPHERD and K. TERTZAG, JJ., reversed, holding that the open
    and obvious danger rule is no longer viable in Michigan, that
    the swimming pool was not a simple tool, and the danger of
    paraplegia was not open and obvious (Docket No. 98313). The
    Supreme Court remanded the case to the trial court to deter-
    mine whether the duty of reasonable care required a warning,
    *436 Mich 673* (1990), and subsequently granted the defendant's
    motion for rehearing. 437 Mich 1224 (1991).

Allan and Jane Spaulding brought an action in the Wayne
    Circuit Court against Lesco International Corporation, and
    others, alleging, inter alia, breach of a duty to warn. The court,
    John H. Hausner, J., granted summary disposition for the
    defendants, finding that there was no duty to warn of the open
    and obvious danger of diving into shallow water. The Court of
    Appeals, GRIFFIN, P.J., and GILLIS and SAWYER, JJ., affirmed in

REFERENCES

Am Jur 2d, Products Liability § 342.

Products Liability: modern status of rule that there is no liability
    for patent or obvious dangers. 35 ALR4th 861.

an opinion per curiam (Docket No. 99524). The plaintiffs appeal.

William and Pamela Horen brought an action in the Saginaw Circuit Court against Coleco Industries and others, alleging in pertinent part breach of a duty to warn of the dangers of diving into an aboveground pool. The court, Joseph R. McDonald, J., granted summary disposition for the defendants, concluding that because the danger involved in diving headfirst into an aboveground swimming pool is open and obvious, there was no duty to warn. The Court of Appeals, WEAVER, P.J., and SHEPHERD and F. D. BROUILLETTE, JJ., reversed, holding that where the injury was reasonably foreseeable, a question of fact remained concerning whether the manufacturer used reasonable care in guarding against unreasonable, foreseeable injuries, even where the danger was obvious (Docket No. 101110). The defendants appeal.

In an opinion by Justice BOYLE, joined by Justices BRICKLEY, RILEY, and GRIFFIN, the Supreme Court *held:*

The manufacturer of a simple product has no duty to warn of the product's potentially dangerous conditions or characteristics that are readily apparent or visible upon casual inspection and reasonably expected to be recognized by the average user of ordinary intelligence. In these cases, the pools were not defective or unreasonably dangerous for want of a warning; thus, summary disposition was properly granted. The obvious danger doctrine in cases of negligent failure to warn is valid with respect to simple products. Because the doctrine addresses the existence of a duty to warn, the adoption of comparative negligence had no effect on the determination of duty.

1. There is no dispute that the aboveground pools in these cases are simple products. The condition creating the asserted danger, shallow water, is a fact that is readily apparent or discoverable upon casual inspection. The potential for injury from a dive into the observably shallow water in these pools is a common and generally recognized danger of which users are aware. Special experience is not required to perceive the danger. Where, as in this case, the facts require the conclusion that the risk of serious harm is open and obvious, the law does not impose a duty upon a manufacturer to warn of all conceivable ramifications of injuries that might occur from the use or foreseeable misuse of its simple product.

2. In the context of design defects, liability for the choice of a design is not determined solely on the obvious nature of a defect. However, in the context of a failure to warn, the obvious nature of a simple product's potential danger functions as an inherent warning that the risk is present. Where the very condition that causes an injury is wholly revealed by casual observation of a simple product in normal use, a duty to warn serves no fault-based purpose. Whether a condition is open and obvious, and whether the danger asserted is the cause of an

injury that a warning allegedly would have prevented, must be addressed product by product.

3. Determination of the obvious character of a product-connected danger is objective. The focus is the typical user's perception and knowledge and whether the relevant condition or feature that creates the danger associated with use is fully apparent, widely known, commonly recognized, and anticipated by the ordinary user or consumer. While a plaintiff's subjective knowledge is immaterial with regard to whether a danger is open and obvious, it is relevant to determining whether, given the existence of a duty, failure to warn was the proximate cause of a user's injuries.

4. Where a defendant argues that it owes no duty to warn because of the obvious nature of a danger, a court is required, as a threshold matter, to determine whether reasonable minds could differ with respect to whether the danger is open and obvious. If reasonable minds cannot differ, the matter is determined by the court as a matter of law. If reasonable minds can differ, the obviousness of the risk must be determined by the jury.

5. The duty to warn in the context of products liability is an exception to the general rule of nonrescue, imposing an obligation on sellers to transmit known safety-related information to buyers or users when the sellers know or should know that the buyer or user is unaware of the information. The question is one of law. Manufacturers have a duty to warn purchasers or users of dangers associated with the intended use or reasonably foreseeable misuse of their products; the scope of the duty is not unlimited, however. A manufacturer or seller must have actual or constructive knowledge of the claimed danger, have no reason to believe that the users will realize the product's dangerous condition, and fail to exercise reasonable care to inform users of a dangerous condition or of facts that likely would make the product dangerous. Manufacturers have no duty to warn where it reasonably may be perceived that a potentially dangerous condition of a product is readily apparent or may be disclosed by casual inspection, and it cannot be said that only persons of special experience will realize the product's potential danger.

*Glittenberg,* reversed.

*Spaulding,* affirmed.

*Horen,* reversed.

Justice LEVIN, joined by Chief Justice CAVANAGH, dissenting, stated that because the plaintiffs presented evidence sufficient to raise a question of material fact whether the danger of diving in a shallow aboveground swimming pool is open and obvious, the cases should be remanded for trial.

A manufacturer's duty to warn is not automatically excused when the risk of harm is obvious. In these cases, the plaintiffs

presented substantial evidence tending to show that users of aboveground pools do not perceive the risk of quadriplegic injury from diving, that they do not know how to dive in shallow water safely, and that it is possible to effectively warn of the risks of diving in shallow pools, evidence the majority ignores. In concluding that because the shallowness of an aboveground pool is obvious and the general risk of diving in such a pool is also obvious there is no obligation to warn of the specific risk of shallow diving and catastrophic diving injury, the majority effectively immunizes manufacturers and sellers of aboveground swimming pools from liability, inviting the swimming pool industry to take a step back on safety issues.

A reasonable person, viewing the plaintiffs' evidence as a whole, could conclude that a significant number of catastrophic injuries occur, that the swimming pool industry has been aware of the potential for such injuries for a number of years, and in many instances provided warnings with the product, and that the likely consuming public does not appreciate either the general risk of diving in shallow water in an aboveground swimming pool or the specific risk of quadriplegic injury occurring during a shallow dive, assumed by the uninformed diver to be safe. Performance of a shallow dive, while evidence that the diver recognizes a need to modify actions in response to a perceived danger, is also evidence that divers incorrectly perceive that execution of a shallow dive is sufficient protection from the danger presented by diving in a shallow aboveground swimming pool. Viewed in a light most favorable to the plaintiffs, it may be concluded the plaintiffs offered sufficient evidence both of the latency of the specific risk of catastrophic injury and that divers are unaware of the risks posed by diving in shallow water to pose a genuine issue of material fact whether the specific risk is open and obvious.

While there is no legal obligation to supply superfluous warnings, the plaintiffs claim that they should have been warned that the risk of a catastrophic injury—quadriplegia—might result from diving into shallow aboveground pools, that this risk is not obvious, and that these pools would have been safer if a warning had been provided. A jury properly might conclude that the asserted danger is latent and that a warning would make the product safer to use.

The simplicity or complexity of a product is not controlling and is not determinative of whether a warning is required. The pertinent inquiry is whether a danger is latent. If a simple product in principle can never present an obvious risk to users, clearly the definition of simple product merely expresses the prejudgment that no latent risk inheres. At that point the inquiry should focus on the basis for prejudgment. If a specific latent danger is associated with a given product, there is an obligation to warn even where an obvious danger of a more general character is also present.

Justice MALLETT, dissenting, stated that because the threat

presented is not open and obvious, an aboveground pool manufacturer has a duty to warn.

174 Mich App 321; 435 NW2d 480 (1989) reversed.

182 Mich App 285; 451 NW2d 603 (1990) affirmed.

169 Mich App 725; 426 NW2d 794 (1988) reversed.

PRODUCTS LIABILITY — DUTY TO WARN — SIMPLE PRODUCTS — OBVIOUS DANGERS — ORDINARY USERS.

The manufacturer of a simple product has no duty to warn of the product's potentially dangerous conditions or characteristics that are readily apparent or visible upon casual inspection and reasonably expected to be recognized by the average user of ordinary intelligence.

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw*) for the plaintiffs in *Glittenberg.*

*Richard M. Goodman, Jonathan L. Walker, Thomas W. Stephens,* and *Mark Granzotto* for the plaintiffs in *Spaulding.*

*Trogan & Trogan, P.C.* (by *Bruce F. Trogan*), for the plaintiffs in *Horen.*

*Kerr, Russell & Weber* (by *Robert G. Russell, Joanne Geha Swanson,* and *Janice A. Furioso*) for the defendants in *Glittenberg.*

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana* and *Dwight G. Conger*), for defendants-appellees Pietila Brothers.

*Paskin, Nagi & Baxter, P.C.* (by *Jeannette A. Paskin* and *Daniel J. Seymour*), for defendant-appellee Coleco Industries, Inc., and defendants Doughboy and Hoffinger.

*Ulanoff, Ross & Wesley, P.C.* (by *Stuart A. Ulanoff* and *Hilde Farmer-Brooks*), for defendant Leso International Corporation.

*Garan, Lucow, Miller, Seward, Cooper & Becker,*

*P.C.* (by *Milton Lucow, Rosalind Rochkind,* and *David M. Shafer*), for defendant S. K. Plastics Corporation.

*Paskin, Nagi & Baxter, P.C.* (by *Jeanette A. Paskin*), and *Irwin F. Hauffe, P.C.* (by *Irwin F. Hauffe II*), for the defendants in *Horen.*

Amici Curiae:

*Paskin, Nagi & Baxter, P.C.* (by *Jeanette A. Paskin* and *Daniel J. Seymour*), for Hartford Insurance Company and Claims Management, Inc.

*Plunkett & Cooney, P.C.* (by *Ernest R. Bazzana*), for Association of Defense Trial Counsel, Michigan Defense Trial Counsel, and Defense Research Institute.

*Aaron D. Twerski* and *Bowman & Brooke* (by *Terrence E. Haggerty*) for Product Liability Advisory Council, Inc.

*Barry P. Waldman, Mark Granzotto, Monica Farris Linkner,* and *Charles P. Burbach* for Michigan Trial Lawyers Association.

*Ronald R. Gilbert* for Foundation for Spinal Cord Injury Prevention and Aquatic Injury Safety Foundation.

ON REHEARING

BOYLE, J. In these cases, we confront again the scope of the duty to warn. The issue is whether summary disposition was properly granted in favor of the defendant manufacturers and sellers on the basis that they had no duty to warn of the danger of a headfirst dive into the shallow water of an aboveground pool, which the parties do not dispute

is a simple tool,[1] that is, a product all of whose essential characteristics are fully apparent.

The lengthy factual and procedural background for this inquiry is set forth in the appendix. In brief, each plaintiff sustained tragic injuries when he dove into the shallow water of an aboveground pool. Each previously had been in the pool in question and each acknowledged that he knew the depth of the water in the pool and that a deep dive into shallow water was dangerous. The Court of Appeals reversed the trial court's grant of summary disposition in *Glittenberg v Wilcenski,* 174 Mich App 321; 435 NW2d 480 (1989), and *Horen v Coleco Industries, Inc,* 169 Mich App 725; 426 NW2d 794 (1988), and affirmed summary disposition in *Spaulding v Lesco Int'l Corp,* 182 Mich App 285; 451 NW2d 603 (1990). This Court's plurality result in *Glittenberg v Doughboy Recreational Industries, Inc,* 436 Mich 673; 462 NW2d 348 (1990) (*Glittenberg I*), led to rehearing and consolidation of these cases. 437 Mich 1224 (1991).

After meticulous consideration of the records below and the significant issues implicated,[2] we now hold that summary disposition was properly granted in favor of the defendants. The manufacturer of a simple product has no duty to warn of the product's potentially dangerous conditions or characteristics that are readily apparent or visible upon casual inspection and reasonably expected to be recognized by the average user of ordinary intelligence. On this record we conclude that the product is not defective or unreasonably dangerous for want of a warning. Because the duty question involves the issue of fault for which there is no material issue of fact, we reverse the decisions of the Court of Appeals in *Glittenberg* and *Horen*

---

[1] A different issue would be presented if it were contended that the pools involved in these cases could not be so characterized.

[2] The prior record was inadequate to allow us to evaluate whether a material issue of fact regarding the open and obviousness of the danger could be created.

and affirm the decision of the Court of Appeals in
*Spaulding.*

I

In the products context, duty to warn has been
described as an exception to the general rule of
nonrescue, imposing an obligation on sellers to
transmit safety-related information when they
know or should know that the buyer or user is
unaware of that information. As agreed in *Glitten-
berg,* the question of duty is to be decided by the
trial court as a matter of law. *Antcliff v State
Employees Credit Union,* 414 Mich 624, 640; 327
NW2d 814 (1982); *Smith v Allendale Mutual Ins
Co,* 410 Mich 685, 713-715; 303 NW2d 702 (1981).[3]

Most jurisdictions that have addressed similar
cases have been unwilling to impose liability on
the pool manufacturer or seller.[4] Summary judg-
ment in favor of the defendant has been based on
lack of a causal connection between the alleged
negligent failure to warn and the plaintiff's in-
jury.[5] Courts typically focus on the plaintiff's depo-
sition testimony, establishing familiarity with the

[3] See Prosser & Keeton, Torts (5th ed), § 96, p 686; 2 Restatement
Torts, 2d, § 388, pp 300-301; 3 American Law of Products Liability, 3d,
§ 33:25, pp 52-54; and Twerski, Weinstein, Donaher & Piehler, *The
use and abuse of warnings in products liability—design defect litiga-
tion comes of age,* 61 Cornell L R 495, 523-524 (1976).

[4] See cases cited in n 5 and also *Smith v Stark,* 103 AD2d 844; 478
NYS2d 353 (1984); *Neff v Coleco Industries, Inc,* 760 F Supp 864 (D
Kan, 1991); *Mucowski v Clark,* 404 Pa Super 197; 590 A2d 348 (1991);
*Greibler v Doughboy Recreational, Inc,* 160 Wis 2d 547; 466 NW2d
897 (1991); *Winant v Carefree Pools,* 709 F Supp 57 (ED NY, 1989).
Contrary to the assertions in the dissent, similar results have been
reached despite similar record evidence. See, for example, *Neff, supra.*

[5] *Kelsey v Muskin Inc,* 848 F2d 39 (CA 2, 1988); *Colosimo v May
Dep't Store Co,* 466 F2d 1234 (CA 3, 1972); *McCormick v Custom
Pools, Inc,* 376 NW2d 471 (Minn App, 1985); *Vallillo v Muskin Corp,*
212 NJ Super 155; 514 A2d 528 (1986); *Howard v Poseidon Pools,* 72
NY2d 972; 534 NYS2d 360; 530 NE2d 1280 (1988); *Belling v Haugh's
Pools, Ltd,* 126 AD2d 958; 511 NYS2d 732 (1987).

Of the cases cited by the dissent, ns 31 and 32, only two are
apposite to the issue presented.

pool and awareness of the depth of the water in relation to the body, and hence recognition of the need to execute a shallow, flat dive in order to avoid contact with the bottom of the pool and injury. From this, it is concluded that, because the plaintiff was aware of the shallow condition of the pool's water and the dangers inherent in a head-first dive into observably shallow water, the absence of a warning conveying those very facts could not be a proximate cause of the plaintiff's injuries.[6]

Although these cases could be decided on the fact specific basis of causation, the temptation to do so or to rely on the observation that a jury should be permitted to determine whether the asserted danger is latent, LEVIN, J., *post*, p 418, simply postpones to another day the need to grapple with the more difficult duty analysis. On the record here presented, we find that the plaintiffs' evidence fails to demonstrate the existence of a necessary antecedent to resolution of the causation issue, i.e., that the defendants owe the plaintiffs a duty to warn.

II

A

Manufacturers have a duty to warn purchasers or users of dangers associated with the intended use or reasonably foreseeable misuse of their products,[7] but the scope of the duty is not

---

[6] The dissent attempts to distinguish the swimming pool cases on the basis that some plaintiffs allege that they were injured while attempting a flat or shallow dive as opposed to a steep, vertical dive. Nonetheless, shallow or flat dives are, in fact, headfirst dives.

[7] *Antcliff, supra* at 638. The Court concluded that this Court's "prior decisions support a policy that a manufacturer's standard of care includes the dissemination of such information, whether styled as warnings or instructions, as is appropriate for the safe use of its product. If warnings or instructions are required, the information provided must be adequate, accurate and effective." *Id.*

unlimited.[8] As one commentator observed:

> If there were an obligation to warn against all injuries that conceivably might result from the use or misuse of a product, manufacturers would find it practically impossible to market their goods. [Noel, *Products defective because of inadequate directions or warnings,* 23 SW L J 256, 264 (1969).]

A manufacturer's or seller's duty to warn of its product's potentially dangerous condition "is not a duty which necessarily attaches to the status of manufacturer or seller, nor is it one which exists regardless of the nature of the product." Anno:

---

[8] *Id.* at 639. The Court was careful to note that the manufacturer's interests are also entitled to protection. Furthermore, in *Owens v Allis-Chalmers Corp,* 414 Mich 413, 432; 326 NW2d 372 (1982), and *Prentis v Yale Mfg Co,* 421 Mich 670, 683; 365 NW2d 176 (1984), this Court recognized that product manufacturers and sellers are not insurers and, thus, they are not "absolutely liable for any and all injuries sustained from the use of [their] products."

The dissent cites *Moning v Alfono,* 400 Mich 425; 254 NW2d 759 (1977), to support the argument that placing a product on the market creates the requisite relationship between a manufacturer and persons affected by use of the product giving rise to a legal obligation or duty to the persons so affected, *post,* p 420, n 17. However, we note that the Court in *Moning* relied on Prosser, Torts (4th ed), § 37, p 206, which provided: "It is no part of the province of a jury to decide whether a manufacturer of goods is under any obligation for the safety of the ultimate consumer," to conclude:

> It is now established that the manufacturer and wholesaler of a product, by marketing it, owe a legal duty to those affected by its use. The duty of a retailer to a customer with whom he directly deals was well established long before the manufacturer and wholesaler were held so obligated. The scope of their duty now also extends to a bystander. [400 Mich 433.]

The case law cited to support this proposition was *Piercefield v Remington Arms Co, Inc,* 375 Mich 85; 133 NW2d 129 (1965), and *MacPherson v Buick Motor Co,* 217 NY 382; 111 NE 1050 (1916). Both of those cases involved manufacturer liability when defectively made products foreseeably injured innocent bystanders. Imposing a duty of safety upon retailers and manufacturers to persons injured by the use or misuse of a product sold, without regard to the type of product, the method of marketing, or whether it was defective, is in effect, absolute liability; a concept rejected by this Court in *Prentis v Yale Mfg Co, supra.*

*Manufacturer's or seller's duty to give warnings regarding product as affecting his liability for product-caused injury,* 76 ALR2d 9, 16. For policy reasons, the law qualifies a manufacturer's duty to warn by declaring some risks to be outside that duty. See *Antcliff, supra* at 630-631,[9] *Elbert v Saginaw,* 363 Mich 463, 475-476; 109 NW2d 879 (1961),[10] and *Friedman v Dozorc,* 412 Mich 1, 22; 312 NW2d 585 (1981).[11]

A duty is imposed on a manufacturer or seller to warn under negligence principles summarized in § 388 of 2 Restatement Torts, 2d, pp 300-301.[12] Basically, the manufacturer or seller must (a) have

---

[9] This Court stated in *Antcliff* at 631:

> The terse legal conclusion that a duty is owed by one to another represents a judgment, as a matter of policy, that the latter's interests are entitled to legal protection against the former's conduct.

[10] As the *Elbert* Court elucidated at 476:

> [T]he problem of duty is simply the problem of the degree to which one's uncontrolled and undisciplined activities will be curtailed by the courts in recognition of the needs of organized society. . . . It involves, as we have seen, much of legal history, of precedent, of allocations of risk and loss.

[11] The *Friedman* Court at 22, observed:

> In a negligence action the question whether the defendant owes an actionable legal duty to the plaintiff is one of law which the court decides after assessing the competing policy considerations for and against recognizing the asserted duty.

See also Prosser & Keeton, *supra,* § 53, p 358:

> [I]t should be recognized that "duty" is not sacrosanct in itself, but is only an expression of the sum total of those considerations of policy which lead the law to say that the plaintiff is entitled to protection.

[12] The basic duty to warn section was initially set out in 2 Restatement Torts, § 388, p 1039, and has been reaffirmed with minor changes in the revision, 2 Restatement Torts, 2d, § 388.

actual or constructive knowledge of the claimed danger, (b) have "no reason to believe that those for whose use the chattel is supplied will realize its dangerous condition," and (c) "fail to exercise reasonable care to inform [users] of its dangerous condition or of the facts which make it likely to be dangerous." *Id.* at 301.

Comment k to subsection 388(b) explains the conditions necessary for recognition of the duty to warn, stating the generally accepted rule that a manufacturer or seller has no duty to warn of open and obvious dangers connected with an otherwise nondefective product.[13] See anno: 76 ALR2d 38. See also 3 American Law of Products Liability, 3d, § 33:25, p 52. A manufacturer has no duty to warn if it reasonably perceives that the potentially dangerous condition of the product is readily apparent or may be disclosed by a mere casual inspection, and it cannot be said that only persons of special experience will realize that the product's

---

[13] The full text of comment k reads:

One who supplies a chattel to others to use for any purpose is under a duty to exercise reasonable care to inform them of its dangerous character in so far as it is known to him, or of facts which to his knowledge make it likely to be dangerous, *if, but only if,* he has no reason to expect that those for whose use the chattel is supplied will discover its condition and realize the danger involved. It is not necessary for the supplier to inform those for whose use the chattel is supplied of a condition which a mere casual looking over will disclose, unless the circumstances under which the chattel is supplied are such as to make it likely that even so casual an inspection will not be made. However, the condition, although readily observable, may be one which only persons of special experience would realize to be dangerous. In such case, if the supplier, having such special experience, knows that the condition involves danger and has no reason to believe that those who use it will have such special experience as will enable them to perceive the danger, he is required to inform them of the risk of which he himself knows and which he has no reason to suppose that they will realize. [2 Restatement Torts, 2d, § 388, pp 306-307. Emphasis added.]

condition or characteristic carries with it a potential danger.

In the context of warnings of the obvious danger of simple products, the duty inquiry asks whether people must be told what they already know. Warnings protect consumers where the manufacturer or seller has superior knowledge of the products' dangerous characteristics and those to whom the warning would be directed would be ignorant of the facts that a warning would communicate. Thus, it has been observed that no duty exists where "the consumer is in just as good a position as the manufacturer to gauge the dangers associated with the product . . . ." 3 Products Liability, *supra,* § 33:25, p 55. Anno: 76 ALR2d 29-30. See also Madden, *The duty to warn in products liability: Contours and criticism,* 89 W Va L R 221, 231 (1986).

The seminal case regarding "simple tools" is *Jamieson v Woodward & Lothrup,* 101 US App DC 32, 35, 37; 247 F2d 23 (1957), cert den 355 US 855 (1957). The court explained:

> A manufacturer cannot manufacture a knife that will not cut or a hammer that will not mash a thumb or a stove that will not burn a finger. The law does not require [a manufacturer] to warn of such common dangers.
>
> *       *       *
>
> [W]here a manufactured article is a simple thing of universally known characteristics, not a device with parts or mechanism, the only danger being not latent but obvious to any possible user, if the article does not break or go awry, but injury occurs through a mishap in normal use, the article reacting in its normal and foreseeable manner, the manufacturer is not liable for negligence.

Determination of the "obvious" character of a product-connected danger is objective. The focus is

the typical user's perception and knowledge and whether the relevant condition or feature that creates the danger associated with use is fully apparent, widely known, commonly recognized, and anticipated by the ordinary user or consumer. 3 Products Liability, *supra,* § 33:22, p 47.[14]

Open and obvious dangers are *conditions* that create a risk of harm that

> is visible, . . . is a well known danger, or . . . is discernible by casual inspection. Thus, one cannot be heard to say that he did not know of a dangerous condition that was so obvious that it was apparent to those of ordinary intelligence. [3 Products Liability, *supra,* § 33:26, p 56.][15]

---

[14] Prosser & Keeton, *supra,* § 96, pp 686-687 observed:

> [C]ourts have usually meant by "obvious danger" a condition that would ordinarily be seen and the danger of which would ordinarily be appreciated by those who would be expected to use the product.

[15] This analysis and definition of "obvious dangers" is consistent with the approach used by a vast majority of the jurisdictions in their negligent failure to warn cases. See *Ford Motor Co v Rodgers,* 337 So 2d 736, 740 (Ala, 1976) ("commonly known"); *Prince v Parachutes, Inc,* 685 P2d 83, 88 (Alas, 1984) ("dangers that would be readily recognized by the ordinary user of the product"); *Brown v Sears, Roebuck & Co,* 136 Ariz 556, 562; 667 P2d 750 (1983) ("simple thing of universally known characteristics," "every adult knows that if an electrical extension cord is cut or frayed a danger of electrical shock is created"); *Delahanty v Hinckley,* 564 A2d 758, 760 (DC App, 1989) ("'danger, or potentiality of danger, is generally known and recognized'"); *Orkin Exterminating Co v Dawn Food Products,* 186 Ga App 201, 203; 366 SE2d 792 (1988) ("common dangers connected with the use of a product"); *Kokoyachuk v Aeroquip Corp,* 172 Ill App 3d 432, 439; 122 Ill Dec 348; 526 NE2d 607 (1988) ("generally appreciated"); *Maguire v Pabst Brewing Co,* 387 NW2d 565, 571 (Iowa, 1986) (risks sufficiently known to consumers at large); *Duncan v Louisiana Power & Light Co,* 532 So 2d 968, 971 (La App, 1988) ("the danger and the manner of avoiding it are common knowledge"); *Lorfano v Dura Stone Steps, Inc,* 569 A2d 195, 197 (Me, 1990) ("patently obvious and equally apparent to all"); *Nicholson v Yamaha Motor Co,* 80 Md App 695, 720; 566 A2d 135 (1989) (generally known and recognized); *Laaperi v Sears, Roebuck & Co, Inc,* 787 F2d 726, 730 (CA 1, 1986) (applying Massachusetts law) (risks discernible by casual inspection); *Mix v MTD Products, Inc,* 393 NW2d 18, 19 (Minn App, 1986)

Thus, a plaintiff's subjective knowledge is immaterial to the antecedent determination of an open and obvious danger. It is relevant, rather, to the determination whether, given the existence of a duty, the defendant's failure to warn was the legal or proximate cause of a plaintiff's injuries. 3 Products Liability, *supra*, § 33:23, pp 48-50.[16]

Our jurisprudence recognizes the well-established rule that there is no duty to warn of dangers that are open and obvious.[17] We have also narrowed application of the no-duty rule to those cases involving "simple tools or products." *Owens v Allis-Chalmers Corp,* 414 Mich 413, 425; 326 NW2d 372 (1982). We have rejected the proposition that the "open and obvious danger" rule is an incantation that obviates the threshold inquiry of duty in design defect cases. We have not held that the duty inquiry should be similarly limited as to the obligation to communicate safety-related infor-

---

("obvious to anyone using the product"); *Grady v American Optical Corp,* 702 SW2d 911, 915 (Mo App, 1985) ("commonly known"); *Smith v Hub Mfg, Inc,* 634 F Supp 1505, 1508 (ND NY, 1986) (danger that is well known); *Simpson v Hurst Performance, Inc,* 437 F Supp 445, 447 (MD NC, 1977), aff'd 588 F2d 1351 (CA 4, 1978) ("a condition which is plainly observable"); *Snyder v Philadelphia,* 129 Pa Commw 89, 94; 564 A2d 1036 (1989) ("generally recognizable" danger); *Brune v Brown Forman Corp,* 758 SW2d 827 (Tex App, 1988) (well known to the community generally); *Shuput v Heublein Inc,* 511 F2d 1104, 1106 (CA 10, 1975) (applying Utah law) (well known; common knowledge); *Menard v Newhall,* 135 Vt 53, 55; 373 A2d 505 (1977) ("generally known and recognized").

[16] See also *Nabkey v Jack Loeks Enterprises,* 376 Mich 397; 137 NW2d 132 (1965); *Spencer v Ford Motor Co,* 141 Mich App 356; 367 NW2d 393 (1985); *Van Dike v AMF Inc,* 146 Mich App 176; 379 NW2d 412 (1985); *Bishop v Interlake, Inc,* 121 Mich App 397; 328 NW2d 643 (1982); *Durkee v Cooper of Canada, Ltd,* 99 Mich App 693; 298 NW2d 620 (1980). See also Henderson & Twerski, *Doctrinal collapse in products liability: The empty shell of failure to warn,* 65 NYU L R 265, 306 (1990).

[17] *Fisher v Johnson Milk Co, Inc,* 383 Mich 158; 174 NW2d 752 (1970); *Hensley v Muskin Corp,* 65 Mich App 662; 238 NW2d 362 (1975); *Durkee v Cooper of Canada, Ltd, supra; Mach v General Motors Corp,* 112 Mich App 158; 315 NW2d 561 (1982); *Raines v Colt Industries, Inc,* 757 F Supp 819 (ED Mich, 1991). See also anno: 76 ALR2d 28-29.

mation upon which the warnings leg of products
liability claims rest.[18] Thus, the narrow issue pre-
sented here is whether there is a duty to warn of
the dangerous characteristics of a simple product
that are readily apparent or easily discoverable
upon casual inspection by the average user of
ordinary intelligence.

B

In the design defect context, obvious risks may
unreasonably breach the duty to adopt a design
that safely and feasibly guards against foreseeable
misuse. Because the manufacturer's liability for
choice of design is not determined solely by look-
ing at the obvious nature of the alleged defect,
obviousness of the danger does not preclude the
possibility that an alternative design could reduce
the risk of harm at a cost and in a manner that
maintains the product's utility. *Owens, supra.*

In the failure to warn context, the obvious na-
ture of the simple product's potential danger
serves the core purpose of the claim, i.e., it func-
tions as an inherent warning that the risk is
present. Stated otherwise, if the risk is obvious
from the characteristics of the product, the prod-
uct itself telegraphs the precise warning that
plaintiffs complain is lacking.[19] See Henderson &
Twerski, *Doctrinal collapse in products liability:*

[18] Justice Levin's approach would preclude the inquiry by conclud-
ing that because a relationship exists between a manufacturer and a
consumer, the manufacturer's status subjects it to a jury determina-
tion concerning the reasonableness of its conduct.

[19] By contrast, the ordinary consumer or product user will find it
difficult to discover the risk posed by some medicines or to uncover
other injury producing facts. See, e.g., *Larson v Johns-Manville Sales
Corp,* 427 Mich 301; 399 NW2d 1 (1986); *In re Certified Questions,* 419
Mich 686; 358 NW2d 873 (1984). Risk utility balancing, consumer
expectation, and the efficient allocation of resources supports the
imposition of a duty to warn in such cases. See Landes & Posner, *The
Economic Structure of Tort Law* (Cambridge, Mass: Harvard Univer-
sity Press, 1987), pp 295-297.

*The empty shell of failure to warn,* 65 NYU L R 265, 282 (1990). Thus, this is not a situation in which duty is based on the negligence principle of omission to protect against foreseeable injury. Nor is it a situation where the manufacturer is held to a higher standard to protect against unknown or unappreciated properties of the product or in its use, *Jennings v Tamaker Corp,* 42 Mich App 310; 201 NW2d 654 (1972). The dissent's observation notwithstanding,[20] all properties of the pools in these cases were knowable, and known. The fact that most individuals do not understand how the laws of physics operate during a dive no more alters the perceived danger in the use of this product than failure to understand the medical reasons why a cut with a knife that severed a major artery could lead to death or catastrophic injury.

In a simple product situation, the warning leg of products liability for products in normal use presents no real risk/utility issue, nor does it serve to protect a knowledgeable user who is distracted or inattentive. Thus, the obvious nature of the danger serves the exact function as a warning that the risk is present. Reduced to its simplest terms, the obvious danger rule in the context of a warning with regard to a simple product is both fair and logical. Where a warning is not needed because the product's potentially dangerous condition (and not the consequences of ignoring that condition) is fully evident, providing a warning does not serve to make the product safer.[21]

There is no duty to warn as to the obvious

[20] The position advocated by the dissent confuses the concept of specific risk with the types of injuries that might be incurred. For example, while there is a general risk of hazard to health from smoking, the risk to fetal life is a distinct specific risk as perhaps is the risk to third parties of secondary smoke.

[21] See 5 Harper, James & Gray, Torts (2d ed), § 28.5, p 356:

The sharpness of knives and axes, or the tendency of un-

danger of a simple product because an obvious danger is no danger to a "reasonably" careful person. See *Pomer v Schoolman,* 873 F2d 1262 (CA 7, 1989).

The dissent's resort to rhetoric requires us to emphasize that today's holding signals no retreat from *Owens.*[22] Obviousness of danger is merely one factor in the analysis of whether a design is reasonable.

We hold today only, that where the very condition that is alleged to cause the injury is *wholly* revealed by casual observation of a simple product in normal use, a duty to warn serves no fault-based purpose, *Prentis v Yale Mfg Co,* 421 Mich 670; 365 NW2d 176 (1984), and that this approach is consistent with *Owens, supra.* It is one thing to say in a design defect case, even if a danger is open and obvious, that a manufacturer has a duty,

packed fresh meat to spoil are so notorious that a warning could be expected to add nothing useful to the perception gained from one's senses and the knowledge common to all. Nor does any alternative feasible precaution suggest itself.

[22] As recognized by Prosser & Keeton, § 96, p 687:

This objective approach to the issue of *warning* about obvious dangers may be regarded as reasonable, if the court is willing to find obvious dangers defective when there is a feasible way to make the *design* safer.

See also Henderson & Twerski, *supra,* p 282.

In their article, which critically examines failure to warn claims, Henderson and Twerski, underscore:

[T]he argument for abandoning the patent danger rule in warning cases, simply because the rule has been abandoned in design cases, makes no sense. In a design case, the obviousness of the danger does not necessarily preclude the possibility that an alternative design would reduce the risk cost-effectively. By contrast, assuming that some risks are patently obvious, the obviousness of a product-related risk invariably serves the same function as a warning that the risk is present. Thus, nothing is to be gained by adding a warning of the danger already telegraphed by the product itself.

if feasible, to adopt a design to minimize harm and that the manufacturer is at fault if it does not do so. It is quite another thing to say that a manufacturer has an obligation to warn of a simple product's potentially dangerous condition when the condition is readily apparent and its danger widely recognized.

Warning analysis is not preferable to design defect analysis as an approach to products liability. That there may be limited situations when a product implicitly states its warning through the openness of the danger in normal use must not obscure the fact that the ultimate inquiry in products liability is the safety of the overall design.[23] A warning is not a Band-Aid to cover a gaping wound, and a product is not safe simply because it carries a warning. See, generally, Twerski, Weinstein, Donaher & Piehler, *The use and abuse of warnings in products liability—design defect litigation comes of age,* 61 Cornell L R 495 (1976). The converse is also true; design defect analysis must not be used to evaluate failure to warn claims. When a design defect claim is examined, the obvious nature of the product-connected danger will not preclude a court from entertaining a plaintiff's claim that an alternative design could feasibly reduce the risk of injury. However, when a negligent failure to warn claim is examined, the open and obvious danger of a simple product may preclude a plaintiff from establishing the requirement of duty of the prima facie case.[24]

[23] In *Owens, supra* at 426-428, we rejected Professor Henderson's claim that the polycentricity of design defect analysis is inherently unmanageable for courts and the assertion that it was better to have the warning leg of products liability substitute for design defect analysis. We also reject the claim that warning jurisprudence is inherently unmanageable. See Henderson, *Judicial review of manufacturers' conscious design choices: The limits of adjudication,* 73 Colum L R 1531 (1973), Henderson, *Design defect litigation revisited,* 61 Cornell L R 541 (1976), Twerski, Weinstein, Donaher & Piehler, n 3 *supra,* and Henderson & Twerski, *supra.*

[24] The open and obvious danger rule remains embedded in the

Our holding does not "effectively immunize[ ] manufacturers and sellers of aboveground swimming pools from liability . . . ." *Post,* pp 413-414. We do not hold that there is no duty to warn regarding all conditions alleged to be open and obvious. Whether the condition is open and obvious, and whether the very danger asserted is the cause of an injury that a warning would allegedly have prevented, must be addressed on a product-by-product basis.

In summary, when a defendant claims that it owes no duty to warn because of the obvious nature of a danger, a court is required, as a threshold matter, to decide that issue. The court must determine whether reasonable minds could differ with respect to whether the danger is open and obvious.[25] If reasonable minds cannot differ on

common law of the vast majority of states. See, generally, cases cited in anno: 76 ALR2d 28-36, § 9. The doctrine has also been statutorily adopted in six states. See Kan Stat Ann 60-3305; La Rev Stat Ann 9.2800.57; Mont Code Ann 27-1-719(5)(a); NJ Stat Ann 2A:58C-3a; Ohio Rev Code 2307.76(B); Tenn Code Ann 29-28-105(d). See also Henderson & Twerski, *A proposed revision of section 402A of the restatement (second) of torts,* 77 Cornell L R 1513, 1522-1523 (1992).

Of those states that have rejected the rule in design defect cases, a majority uphold application of the rule in failure to warn cases. Compare cases cited in anno: 35 ALR 4th 872-880, § 4 (jurisdictions adopting the view that the patent danger rule does not preclude liability in design cases) with cases cited in anno: 76 ALR2d 28-36, § 9 (jurisdictions adhering to the view that there is no duty to warn of open and obvious dangers). See, e.g., *Holm v Sponco Mfg Inc,* 324 NW2d 207 (Minn, 1982) (rejecting the patent danger rule in design defect cases) and *Mix v MTD Products, Inc,* n 15 *supra* at 19 ("[A] manufacturer of a product has no duty to warn of dangers that are obvious to anyone using the product"); *Micallef v Miehle Co,* 39 NY2d 376; 384 NYS2d 115; 348 NE2d 571 (1976) (rejecting the patent danger rule in design defect cases), and *Kerr v Koemm,* 557 F Supp 283, 287, n 1 (SD NY, 1983) ("Obviousness should not relieve manufacturers of the duty to eliminate dangers from their design if that can reasonably be done, but obviousness relieves the manufacturer of a duty to inform users of a danger"); *Auburn Machine Works Co, Inc v Jones,* 366 So 2d 1167 (Fla, 1979) (rejecting the patent danger rule in design cases), and *Knox v Delta Int'l Machinery Corp,* 554 So 2d 6, 7 (Fla App, 1989) ("[A] manufacturer has no duty to warn consumers of . . . an obvious danger").

[25] This conclusion is supported by the bulk of the cases cited by the

the "obvious" character of the product-connected danger, the court determines the question as a matter of law. If, on the other hand, the court determines that reasonable minds could differ, the obviousness of risk must be determined by the jury. 3 Products Liability, *supra,* § 33:42, pp 69-70.[26]

### III

Viewing the materials presented by plaintiffs in the most favorable light, there is no dispute that the aboveground pools are simple products. No one can mistake them for other than what they are, i.e., large containers of water that sit on the ground, all characteristics and features of which are readily apparent or easily discernible upon casual inspection. As Justice GRIFFIN highlighted in *Glittenberg I, supra* at 695-696:

> [T]here is nothing deceiving about [their] appearance, nothing enigmatic about [their] properties. [They have] no mechanical devices, but rather [are] uncomplicated . . . product[s] with universally known characteristics.

dissent at *post,* pp 422-425, where the courts found that, although there is no duty to warn of a patent danger, under the record facts presented, the courts could not hold as a matter of law that the risk of danger was open and obvious. Compare *Brune v Brown Forman Corp,* 758 SW2d 827 (Tex App, 1988), with *Joseph E Seagram & Sons v McGuire,* 814 SW2d 385 (Tex, 1991). In addition, many of the cases cited by the dissent rely on a strict liability theory of recovery and do not involve simple products. Finally, the claim in *Corbin v Coleco Industries, Inc,* 748 F2d 411 (CA 7, 1984), described by the dissent as particularly persuasive, has been characterized along with *Glittenberg v Wilcenski, supra,* as "absurd." See Henderson & Twerski, *supra,* p 317, and n 208.

[26] The duty issue, like any other, can be broken into (a) rules and (b) the application of those rules to the concrete facts of a given case. Here as elsewhere the court lays down the rules. But the application of those rules to particular facts should be, and in fact usually is, committed to the jury on the duty issue as upon any other. [3 Harper, James & Gray, Torts (2d ed), § 18.8, p 743.]

The condition creating the asserted danger, i.e., shallow water, is a fact that is readily apparent or discoverable upon casual inspection. The record evidence does not counter that fact. The records and reasonable inferences do not support the contention that the potential for injury from a dive into the observably shallow water of these pools is not a common and generally recognized danger. The record does not support the inference that users of aboveground pools are not aware of the general risk of injury,[27] and special experience is not required to perceive the danger or risk of injury presented by the shallow water.

The obvious risk of this simple product is the danger of hitting the bottom. When such a risk is objectively determinable, warnings that parse the risk are not required. The general danger encompasses the risk of the specific injury sustained. In other words, the risk of hitting the bottom encompasses the risk of catastrophic injury.

The gravamen of each of the plaintiff's argument is that the danger presented is not open and obvious because the specific harm of paralysis or death is not generally recognized.[28] Plaintiffs

[27] The record does not reflect and the plaintiffs do not argue, as does the dissent, "that the likely consuming public does not appreciate either the *general* risk of diving in shallow water in an aboveground swimming pool or the *specific* risk of quadriplegic injury . . . ." *Post,* p 415. (Emphasis added.)

[28] For example, in support of the argument that summary disposition was improperly granted, plaintiff Glittenberg relies upon his deposition testimony and an affidavit provided by his expert, Dr. M. Alexander Gabrielson. Viewing this material and the record in a light most favorable to the plaintiff, we are now persuaded that it does not permit inferences contrary to the facts asserted by Doughboy.

Plaintiff's deposition revealed only that he was unaware of the fact that diving in shallow water posed a risk of paralysis. That testimony is clearly insufficient to raise a material issue of duty or proximate cause. We cannot reasonably conclude from the bare fact that plaintiff has testified that he was subjectively unaware of the specific gravity of the danger, that the danger was not well recognized, generally known, and appreciated by those expected to use aboveground pools, or that there is a material issue of fact that lack of a warning was the proximate cause of plaintiff's injury.

Horen and Spaulding add the argument that the danger is not open and obvious because the average user does not generally recognize that the laws of physics, biomechanics, and hydrodynamics can transform a miscalculated shallow dive into a deep dive that is recognized as dangerous.[29] However, the threshold issue is not whether a shallow dive can be successfully executed but, rather, whether people in general are unaware of the fact that there is a risk of serious harm when diving in shallow water. The fact that all plaintiffs acknowledged the necessity to perform a shallow dive simply underscores the conclusion that the risk of diving in shallow water is open and obvious. In effect, plaintiffs seek to convert the duty to warn argument by conceding a readily apparent and generally recognized dangerous condition for which no duty exists, while claiming that because a specific consequence or degree of harm from that dangerous condition, i.e., paralysis or death, is not

Furthermore, Dr. Gabrielson's affidavit does not address the critical issue of the "obvious" nature of the product-connected danger.

We agree that it is undisputed that pool manufacturers were aware of injuries in aboveground pools; however, Dr. Gabrielson's affidavit does not identify from the number of total pool accidents the number of diving injuries that occur yearly in aboveground pools of the type involved in this case.

[29] Plaintiff Horen's expert, Dr. Lawniczak, testified that the general public is not aware of and does not appreciate the grave risk of serious spinal cord injury when diving. Similarly, defendant Coleco's expert, Dr. Richard Stone, testified that there is a general lack of awareness of the risk of catastrophic injury. Plaintiff Spaulding's expert, University of Michigan diving coach James Richardson, also opines that the average person does not appreciate the fact that diving in shallow water carries the potential for life-threatening injuries.

To suggest, as the dissent does when it highlights the testimony of Dr. Lawniczak, *post,* pp 415-416, that a reasonable inference can be drawn that a duty to warn of the danger of diving into a two-foot pool exists, even when viewed most favorably to plaintiffs, is again simply to argue that the trial courts have an obligation to submit every product liability question to the jury. A standing dive into a pool with two feet of water cannot be reasonably perceived by any reasonable juror as anything other than an activity that ignores the essential properties of that simple product.

generally recognized, a specific warning is required.

There is no question that under either negligence or strict liability principles, a fault-based theory of liability will be recognized where the product is defective, either because its design presents an unreasonable danger given the conditions of use, or because there is an unknown risk in use of the product.[30] However, where the facts of record require the conclusion that the risk of serious harm from the asserted condition is open and obvious, and no disputed question exists regarding the danger of the product, the law does not impose a duty upon a manufacturer to warn of all conceivable ramifications of injuries that might occur from the use or foreseeable misuse of the product.[31] As the court observed in *Jamieson, supra* at 39:

> [S]urely a manufacturer, to be protected from liability for negligence, need not enumerate the possible injuries which might befall one . . . . We have in the case at bar a detached retina, but we might have had any of an infinite number of injuries to eye, mouth, ear, nose, etc. We do not agree with, and find no authority to support, a holding either that a manufacturer must utter a general warning of danger from mishap with an article such as this rope or that he must catalog injuries possible upon such a mishap.

See also Noel, *supra,* p 264.

These are difficult cases. Plaintiffs and their families have sustained tragic injuries, the human

---

[30] Even where strict liability is imposed if a product fails to meet consumer expectations, it has been recognized that an aboveground swimming pool meets the expectation of the ordinary consumer, *Vincer v Esther Williams All-Aluminum Swimming Pool Co,* 69 Wis 2d 326; 230 NW2d 794 (1975).

[31] A defendant whose breach of duty causes foreseeable personal harm to the plaintiff, however, is liable for the direct consequences to that individual, even if he could not have foreseen the particular result that did follow. Prosser & Keeton, *supra,* § 43, p 290.

and economic cost of which might as a matter of legislative policy, be otherwise allocated. However, neither negligence nor product liability jurisprudence establishes the legal principle that every injury warrants a legal remedy.

IV

We affirm the validity of the obvious danger doctrine in negligent failure to warn cases as to *simple products.* The doctrine implicates the duty element of the plaintiffs' prima facie case and is a question of law for the court to decide. Because the existence of a duty to warn in the first instance is the issue, adoption of the doctrine of comparative negligence has no effect on the duty determination.[32]

Summary disposition was properly granted in *Glittenberg, Horen,* and *Spaulding.* We reverse the decisions of the Court of Appeals in *Glittenberg* and *Horen* and affirm the decision of the Court of Appeals in *Spaulding.*[33]

---

[32] *Ward v Kmart Corp,* 136 Ill 2d 132, 146; 143 Ill Dec 288; 554 NE2d 223 (1990), see also Robertson, *Ruminations on comparative fault, duty-risk analysis, affirmative defenses, and defensive doctrines in negligence and strict liability litigation in Louisiana,* 44 La L R 1341, 1374-1382 (1984).

[33] Plaintiff Spaulding also argues that the trial court and the Court of Appeals improperly dismissed his design defect claims along with his failure to warn claims. Plaintiff points to his expert's testimony that the ladder's platform provided an invitation to dive and thus argues that the ladder was defectively designed. Plaintiff's expert, Dr. Gabrielson, however, is not qualified, nor does he purport to be, as an expert in the design of aboveground pools and pool apparatus.

At the hearing on the motion for summary disposition, Coleco, the ladder manufacturer, contended that it was entitled to dismissal because the essence of plaintiff's defect claim was that the ladder should have contained warnings against diving. The plaintiff did not dispute Coleco's argument, and the trial court dismissed the case, finding no duty to warn because the asserted danger was obvious. Finding no error, the Court of Appeals affirmed the trial court's decision regarding the design defect issue.

Although we clarify here that the analysis for failure to warn

BRICKLEY, RILEY, and GRIFFIN, JJ., concurred with BOYLE, J.

### APPENDIX

#### FACTUAL AND PROCEDURAL BACKGROUND

The plaintiffs[34] were paralyzed after diving head-first into aboveground pools. Each sued, alleging that his injuries were proximately caused by the pool manufacturer's or seller's negligence in failing to provide a warning against diving.

#### A. *GLITTENBERG v DOUGHBOY*

David Glittenberg was permanently paralyzed when he struck his head on the bottom on an aboveground swimming pool. Mr. Glittenberg testified that he intended to make a shallow or surface dive from the shallow end of the pool toward his wife who was on a floating chair in the deep end of the pool.

The pool, located in the backyard of the plaintiff's neighborhood friends, the Wilcenskis, was built into the side of a hill at the rear end of the house so that the top edge of the pool itself was approximately two feet above the ground level on the west end, and approximately four feet above the ground level on the east end. Doughboy Recreational Industries manufactured the pool,

---

claims is distinct from that in design defect claims, on the basis of the record in *Spaulding,* the Court of Appeals reached the correct conclusion. Thus, we affirm the Court of Appeals in *Spaulding* on this issue.

[34] Connie Glittenberg, Pamela Horen, and Jane Spaulding are named plaintiffs. However, because their loss of consortium claims are derivative in nature, and for convenience sake, we use the term "plaintiffs," to refer to David Glittenberg, William Horen, and Allan Spaulding.

which was surrounded by an attached redwood deck and fence. The water level was approximately three and one-half feet in the shallow end and seven and one-half feet at the deepest point. There was a ledge three and one-half feet below the water line to allow easy access to the water. There was no ladder, no diving board, no depth markings, and no warnings against diving posted on or near the pool.[35]

It is undisputed that the plaintiff was an experienced swimmer and diver, and that he was familiar with the pool, including its depth, having been in the pool at least twice before the accident. He was aware that a deep dive into shallow water was dangerous because he could hit the pool bottom and possibly break an arm or suffer a concussion. However, he considered it safe to make a shallow dive in shallow water, if you "were versed in diving and knew what type of dive you were doing . . . ."

Mr. Glittenberg brought an action against the defendant, Doughboy, and others, alleging in pertinent part that he was seriously and permanently injured as a result of the defendants' negligent conduct in failing to warn of the grave risk of paralysis or death that is inherent when diving into an aboveground pool. The trial court granted Doughboy's motion for summary disposition on the basis that, because the swimming pool was a simple product and the hazards of diving into its shallow water were open and obvious, the defendant had no duty to warn the plaintiff under these

---

[35] Warning labels and instructions for posting the labels were provided by [Doughboy] to the original purchaser of the pool, Fred Bancroft. However, the warning labels were not placed on the pool by Mr. Bancroft or the Wilcenskis, who purchased the pool from Bancroft. [*Glittenberg I, supra* at 677.]

facts.[36] Plaintiff's subsequent motion for rehearing was denied.[37]

The Court of Appeals reversed the decision of the trial court, 174 Mich App 326, holding that the open and obvious danger rule is no longer viable in Michigan and that, under the facts of this case, the swimming pool was not a simple tool, and the danger of paraplegia was not open and obvious:

> Nothing in the appearance of the pool itself gives a warning of the very serious consequences to which a mundane dive can lead. Nor are we convinced that the danger of serious injury from a dive is a risk of which the public is generally aware.[38]

[36] In *Glittenberg I, supra* at 679-681, this Court agreed that, although the defendant's motion for summary disposition was brought pursuant to GCR 1963, 117.2(1), failure to state a claim upon which relief could be granted, the motion would be treated as one brought pursuant to GCR 1963, 117.2(3), which mandated that the moving party be granted judgment as a matter of law if no genuine issue of material fact existed.

[37] In his motion for rehearing, the plaintiff argued that he had secured the opinion of an expert to support his claim that the relevant danger was not open and obvious and that this expert opinion constituted new evidence. The trial court found no basis for reversal because the expert's opinion was merely supportive of the plaintiff's original position, which the court had rejected, and that the plaintiff had had over four years in which to establish the factual basis of his claims.

The trial court also rejected the plaintiff's argument that he should be allowed to amend his complaint to incorporate design defect claims because the plaintiff failed to present the court with a motion incorporating the proposed amended complaint. Moreover, the court emphasized the fact that the alleged design defects were related to the failure to warn claim, which had been pleaded.

[38] The Court of Appeals also explained:

> The fact that warning labels accompanied the pool does not conclusively establish defendant Doughboy's compliance with its legal duty; that involves an inquiry into the applicable standard of care—a question of fact for the jury to decide. Likewise, Glittenberg's admissions regarding his swimming experience and knowledge do not pertain to the duty question but rather concern the questions of proximate causation and comparative negligence—also questions for the jury. [174 Mich App 328.]

Doughboy appealed, and we granted leave to appeal, 433 Mich 880 (1989).[39] However, because the majority was unable to agree on the viability of the open and obvious danger doctrine in cases raising a negligent failure to warn claim, the Court ordered the case remanded to the trial court for a determination of the threshold question whether the duty of reasonable care required a warning.

### B. *HOREN v COLECO INDUSTRIES*

On July 3, 1981, Bill Horen was permanently paralyzed from the chest down when he attempted a shallow or surface-type dive from the deck partially surrounding his in-laws' pool and struck his head on the bottom. At the time of the accident, plaintiff was thirty-three years of age, five feet ten inches tall, and weighed 150 pounds.

The pool measured four feet in height and twenty-four feet in diameter and included partial, manufacturer-supplied[40] decking and fencing which totally enclosed the pool and deck area. There was a ladder leading up to the enclosed pool area and another leading into the water. The center of the pool was dug out to a depth of approximately five feet. The water level ranged from approximately three and one-half feet to four and one-half feet. At the time of the accident

> [t]he pool contained only one small, faded and peeling warning label affixed at the base of a

---

[39] Leave to appeal was limited to the issues whether the defendant manufacturer had a duty to warn the plaintiff that serious or permanent injuries could result from a dive into the shallow end of the defendant's aboveground pool and whether it was error for the trial court to grant summary disposition in the defendant's favor.

[40] The pool was manufactured in 1978 by defendant Coleco, and was sold to the Coxes by defendant Bridgeport. Defendant Lomart is the successor corporation to Coleco.

corner of the chain-link wall adjoining the deck, which read: "No Diving. Shallow Water." However, Mr. Horen testified that he saw no warning labels or signs in or around the pool to indicate that there should be no diving. He also testified that he was a recreational swimmer of limited swimming and diving experience and that he had never received any diving instruction. [169 Mich App 727.]

On the date of the accident, Mr. Horen had not been drinking and was not taking medication. He testified that he had swum in the Coxes' pool once before the accident, had successfully dived from the deck area at that time and on the day of the accident, and, on both occasions, he had seen other adults successfully dive into the pool.

Plaintiff acknowledged that he could see the bottom of the pool from the deck, could tell the depth of the water by where it was in relation to his body, that he was aware of some danger of hitting the bottom of the pool, and that he could scrape or bruise himself if he performed a deep dive. However, he believed the Coxes' pool was a safe depth for a surface or shallow-type dive.

As in *Glittenberg,* the thrust of plaintiff's claims is that the defendants breached a duty to warn of the dangers of diving into the pool. The trial court granted the defendants' motion for summary disposition brought pursuant to MCR 2.116(C)(8),[41] concluding that, because the danger involved in

---

[41] The Court of Appeals recognized that, although the defendant moved for summary disposition pursuant to MCR 2.116(C)(8), summary disposition was to be reviewed as if it were brought pursuant to MCR 2.116(C)(10), because defendant Coleco argued that no genuine issue of material fact existed, that diving headfirst into an above-ground pool is an open and obvious danger for which a manufacturer has no duty to warn, and, hence, as a matter of law, that defendants were entitled to summary disposition. Furthermore, a review of the record revealed that the trial court also considered the motion as if it had been brought pursuant to MCR 2.116(C)(10). 169 Mich App 728.

diving headfirst into an aboveground swimming pool is open and obvious, the pool manufacturer had no duty to warn.

The Court of Appeals reversed the decision of the trial court, concluding, as did the panel in *Glittenberg,* that this Court's holding in *Fisher v Johnson Milk Co, Inc,* 383 Mich 158; 174 NW2d 752 (1970), that there is no duty to warn of an obvious danger associated with a simple product or tool, had been modified by *Owens v Allis-Chalmers Corp, supra.* Thus, the panel held, where the injury was reasonably foreseeable, a jury question remained concerning whether the manufacturer used reasonable care in guarding against unreasonable, foreseeable injuries, even where the danger was obvious.[42]

### C. *SPAULDING v LESCO INT'L CORP*

Allan Spaulding was rendered quadriplegic as a result of diving into and striking his head on the bottom of an aboveground swimming pool at the home of his friend, Richard Henwood. The pool measured twenty-four feet in diameter by four feet

[42] Reviewing the evidence in a light most favorable to plaintiff, the Court of Appeals decided that it could not conclude that a genuine issue of material fact did not exist and pointed out that the plaintiff had presented evidence from which a jury might find the manufacturer's product posed an unreasonable and foreseeable danger.

[A]n ordinary recreational swimmer of limited swimming and diving experience, with no diving training, might believe that a flat, shallow dive could be performed without threat of death or paraplegia, especially when the swimmer was not presented with a hazard sign sufficient to warn of such danger and when other swimmers were observed executing similar dives without harm. Even should the evidence establish [plaintiff's] consciousness of a vague danger, this would not preclude a jury from finding that a warning was nonetheless required to give full appreciation of the life-threatening risks involved. See *Michigan Mutual Ins Co v Heatilator,* 422 Mich 148, 154; 366 NW2d 202 (1985). [169 Mich App 731.]

in height and the depth of water varied from approximately three and one-half feet at the sides to approximately four feet at the center.[43] Mr. Henwood estimated the water depth in the center to be about forty-six or forty-seven inches. On the day in question, plaintiff dived from a small eighteen-inch by eighteen-inch wooden platform that sat a few inches above the lip of the Henwood pool at the top of an "A" frame metal ladder that provided access to the pool. No warnings against diving were displayed on any part of the pool or the ladder.[44] At the time of the accident, plaintiff was thirty-six years old, six feet tall, weighed 215 pounds, and considered himself to be a good swimmer. He had received some instructions in diving, could not recall any specifics, but had been in the Henwood pool on at least one prior occasion, and was in the pool at least fifteen to twenty minutes on the day of the accident. Mr. Spaulding testified that he stood upright in the pool and was aware that the depth of the water was somewhere around his chest level, and that during the time that he was in the pool on August 5, he got in and

[43] The Henwood pool was purchased "used" by Richard Henwood in the spring of 1980, and was allegedly manufactured or distributed by defendants Oceanic Leisure Corporation and Lesco International Corporation. Its replacement liner was manufactured by defendant S. K. Plastics, and sold to Mr. Henwood by defendant Pietila Brothers, and its ladder was manufactured by defendant Coleco. Mr. Henwood installed the pool himself, using, to a certain extent, a manual he received free of charge from defendant Sears entitled, "Above-Ground Swimming Pools Do-It-Yourself Guidebook."

[44] In *Spaulding v Lesco Int'l Corp, supra* at 288, the Court of Appeals noted, however, that the S. K. Plastics warranty for its pool liner did include a warning stating:

This swimming pool does not have sufficient depth for diving. Do not dive, do not allow others to dive into this swimming pool. Diving is dangerous.

The Court of Appeals also noted that, when manufactured, the Coleco ladder allegedly had warnings against diving, but they were absent at the time plaintiff's accident occurred. *Id.*

out of the pool about ten to fifteen times, jumped from the platform into the pool, and dived head-first from the platform into the pool two to four times.

Plaintiff sued the defendants, claiming they breached duties owed him under a number of theories including negligent design, manufacture, and warning, and breach of express and implied warranties of fitness and safety. The trial court granted summary disposition in favor of the defendants, essentially finding in pertinent part regarding all defendants no duty to warn of the open and obvious danger of diving into shallow water. *Spaulding v Lesco Int'l Corp, supra* at 289-290.

Plaintiff appealed, and the Court of Appeals affirmed. Disagreeing with the *Horen* and *Glittenberg* panels, the *Spaulding* Court concluded:

> [A] manufacturer still has no duty to warn of obvious and patent dangers when a simple product is involved. We believe that the above-ground pool in this case was a simple product and that the dangers of making a deep dive into the pool were obvious. Moreover, we agree with the circuit court's conclusion that the failure to warn in this case was not the proximate cause of plaintiff's injuries. Plaintiff knew how deep the water was, how tall he was, and the dangers of making a deep dive into shallow water, including breaking his neck. [*Id.* at 293.]

The trial court in each case granted the defendants' motion for summary disposition on the basis that the danger of diving into shallow water was open and obvious and that the defendants therefore owed the plaintiffs no duty to warn of the danger. The Court of Appeals reversed the ruling of the trial court in *Glittenberg v Wilcenski* and in *Horen v Coleco Industries, Inc,* and affirmed the

trial court ruling in *Spaulding v Lesco Int'l Corp.*
This Court's plurality result in *Glittenberg v
Doughboy Recreational Industries, Inc,* led to re-
hearing and consolidation with *Horen* and *Spauld-
ing.* 437 Mich 1224 (1991).

LEVIN, J. (*dissenting*). The question presented is
whether   summary   disposition   was   properly
granted defendant manufacturers and sellers of
aboveground swimming pools on the basis that the
danger of diving in a shallow aboveground swim-
ming pool is open and obvious.

We would hold that the plaintiffs presented
sufficient evidence to raise a genuine issue of
material fact whether the danger is open and
obvious, and would remand these cases for trial.

The plaintiff in each of these cases became
quadriplegic as the result of diving in an above-
ground swimming pool, and commenced an action
claiming that the manufacturer and seller was
negligent in failing to provide a warning concern-
ing the dangers of diving in such a pool.

The majority holds, as a matter of law, that the
dangers of diving in shallow pools are open and
obvious, and there is no duty to warn. We would
adhere to the approach outlined in *Glittenberg v
Doughboy Recreational Industries, Inc,* 436 Mich
673, 699; 462 NW2d 348 (1990) (*Glittenberg I*),
where, in remanding to the circuit court for fur-
ther factual development, I joined in saying that
"a manufacturer's duty to warn is not automati-
cally excused when the risk of harm is obvious."

This Court remanded *Glittenberg I* for further
factual development so that the question whether
there was an obligation to warn of the dangers of
diving in an aboveground pool would not be an-

swered in a "vacuum."[1] The plaintiffs in the instant cases, consolidated on appeal, proceeded to develop a factual record that contains substantial evidence tending to show that users of above-ground pools do not perceive the risk of quadriplegic injury from diving, that they do not know how to dive in shallow water safely, and that it is possible to effectively warn of the risks of diving in shallow pools.

The majority adopts an analysis that ignores that evidence. In that vacuum, the majority concludes that because the shallowness of an above-ground pool is obvious, and the *general risk* of diving in such a pool is also obvious, there is no obligation to warn of the *specific risk* of "shallow" diving and catastrophic diving injury.[2]

The majority effectively immunizes manufactur-

---

[1] The rationale for the remand was stated:

> The judgment whether a warning was required in the circumstances of this case *should not be made in a vacuum.* The fundamental problem in cases such as this is that we lack the information necessary to make an intelligent decision, even with regard to the obviousness of the dangers of diving. We remain largely uninformed regarding such crucial questions as the efficacy of warnings against diving when they are provided, whether there is, in fact, any safe way to dive into shallow water, and what dangers are actually perceived by the users of above-ground pools. On remand, we urge the parties to provide evidence which will allow the court to evaluate the risk inherent in defendant's product, and its obvious or nonobvious qualities. [436 Mich 702. (Opinion of BOYLE, J.) I signed this opinion. Emphasis added.]

[2] The majority states:

> [W]here the facts of record require the conclusion that the risk of serious harm from the asserted condition is open and obvious, and no disputed question exists regarding the danger of the product, the law does not impose a duty upon a manufacturer to warn of all conceivable ramifications of injuries that might occur from the use or foreseeable misuse of the product. [*Ante,* p 402.]

ers and sellers of aboveground swimming pools from liability, and is regressive because it invites the swimming pool industry to take a step back on safety issues.

I

Our principal disagreement with the majority is with its failure to consider the evidence in the light most favorable to the plaintiffs.

As set forth in the majority opinion, "[t]he gravamen of each of the plaintiff's argument is that the danger presented is not open and obvious because the specific harm of paralysis or death is not generally recognized. Plaintiffs Horen and Spaulding add the argument that the danger is not open and obvious because the average user does not generally recognize that the laws of physics, biomechanics, and hydrodynamics can transform a miscalculated shallow dive into a deep dive that is recognized as dangerous."[3]

Dr. Gabrielson offered the following data:

The National Spinal Cord Injury Data Research Center, through its publications estimates that 800 diving injuries occur each year resulting in paralysis; further that as many as 25% of these injuries occur in pools.

The majority dismisses this evidence with the observation that the fact of injuries does not establish the latency of the danger alleged.[4] Putting aside that the majority concludes that the danger of diving in shallow water is open and obvious as a matter of law without considering the evidence, the frequency of such injuries suggests both the

[3] *Id.,* pp 400-401.
[4] *Id.,* p 400, n 28.

latency of danger and that it is not open and obvious.

A reasonable person, viewing the plaintiffs' evidence as a whole, could conclude that a significant number of catastrophic injuries occur, that the swimming pool industry has been aware of the potential for such injuries for a number of years[5] and in many instances provided warnings with the product, and that the likely consuming public does not appreciate either the general risk of diving in shallow water in an aboveground swimming pool or the specific risk of quadriplegic injury occurring during a shallow dive assumed by the uninformed diver to be safe.

The majority acknowledges that Dr. Lawniczak testified that "the general public is not aware of and does not appreciate the grave risk of serious spinal cord injury when diving,"[6] and that James Richardson testified that "the average person does not appreciate the fact that diving in shallow water carries the potential for life-threatening injuries."[7]

Lawniczak testified that diving in shallow water is not necessarily an open and obvious danger to a recreational swimmer. Richardson, diving coach at the University of Michigan, testified that divers do not really understand the potential for serious injury when diving in a shallow pool: "the general public just does not understand about entering the water and what can happen, even at depths that appear to be, to everybody concerned, safe depths . . . . *It's just a lot more going on there than*

---

[5] Dr. Lawniczak testified on deposition:

The pool industry has had statistical evidence of a "significant problem associated with the foreseeable activity of headfirst entries into swimming pools by recreational users" as far back as the '50's.

[6] *Id.,* p 401, n 29.

[7] *Id.*

*people understand and can imagine is going on."*
(Emphasis added.)

The majority argues that "[t]he fact that all plaintiffs acknowledged the necessity to perform a shallow dive simply underscores the conclusion that the risk of diving in shallow water is open and obvious."[8]

Performance of a shallow dive, while it is evidence that the diver recognizes a need to modify his actions in response to a perceived danger, is also evidence that divers incorrectly perceive that execution of a shallow dive is sufficient protection from the danger presented by diving in a shallow aboveground swimming pool.

Viewing the evidence most favorably to the plaintiffs, we would conclude that they offered sufficient evidence both of the latency of the specific risk of catastrophic injury, and that divers are unaware of the risks posed by diving in shallow water, to pose a genuine issue of material fact whether the specific risk is open and obvious.

II

The majority frames the analysis by distinguishing design defect cases from failure to warn cases for the purpose of applying the open and obvious, or "patent" danger rule. The majority, while acknowledging that the decision of this Court in *Owens v Allis-Chalmers Corp,* 414 Mich 413; 326 NW2d 372 (1982), abrogated the patent danger rule in design defect cases, holds that the open and obvious/patent danger rule still governs in failure to warn cases.[9]

---

[8] *Id.,* p 401.

[9] *Id.,* p 394.

A

The patent danger rule was abrogated in *Owens, supra,* because, in part, the rule removed the incentive for adopting safer product designs.[10] The correlative rationale applies to a failure to warn; a manufacturer should provide warnings that make a product safer to use.[11]

To be sure, there is no legal obligation to supply "superfluous" warnings, warnings that are by definition unneeded. A superfluous warning is not required because a warning is required only when it would make the product safer to use. We all agree that a product warning that does not apprise a consumer of anything of which he is not already aware does not make a product safer to use.

The plaintiffs in the instant cases do not claim that the defendants should have warned of obvious dangers associated with aboveground swimming pools. The plaintiffs claim rather that there is a

[10] *Id.,* p 394.

According to *Owens,* the obviousness of a risk is one factor to be considered in determining what a reasonably prudent manufacturer would do in the circumstances. See *Owens, supra,* p 425; see also *Glittenberg I, supra,* pp 699-700.

[11] If these cases were to be tried by a jury, the jury would be instructed to apply SJI2d 25.31, which does not mention the obviousness of the risk to the plaintiff. The standard instruction speaks of the duty of a defendant manufacturer in these terms:

The defendant had a *duty to use reasonable care* at the time it [manufactured] the [product] *so as to eliminate unreasonable risks of harm or injury* which were reasonably foreseeable.

However, the defendant had *no duty to* [manufacture] a [product] to *eliminate reasonable risks of harm or injury* or risks that were not reasonably foreseeable.

Reasonable care means that degree of care which a reasonably prudent manufacturer would exercise under the circumstances . . . . *It is for you to decide . . . what a reasonably prudent manufacturer would do or not do under those circumstances.*

A failure to fulfill the duty to use reasonable care is negligence. [SJI2d 25.31. Emphasis added.]

risk of catastrophic injury, quadriplegia, that may
result from diving in shallow aboveground pools,
that this risk is *not* obvious, and that such pools
would be safer to use if manufacturers provided a
warning concerning the risk of catastrophic injury.
A jury might properly conclude from the plaintiffs'
evidence that the asserted danger is latent, and
that a warning would make the product safer to
use. Such a warning would not, on such a finding,
be superfluous.

III

The majority attaches considerable significance
to what it describes as the "simple" character of
aboveground pools. The majority argues that be-
cause an aboveground pool is a "simple product"
its inherent "characteristics and features . . . are
readily apparent or easily discernible upon casual
inspection."[12]

This description of "simple product" begs the
question, since it assumes that all characteristics
of a "simple" product are universally known, and
therefore such products cannot present a latent
danger. Under the majority's approach, a latent
danger could never be found, and a warning never
would be needed with a "simple product" because
the characteristics of such products are, *by defini-
tion,* "universally known."

At some point "simplicity" and "complexity"
come full circle. If simple products require no
warnings because their characteristics are univer-
sally known, so too complex products because their
characteristics are universally *unknown,* and con-
sumers should reasonably treat them with caution.
If a car battery is not a simple product, then it can
be argued that it is mysterious enough to warrant

[12] *Ante,* p 399.

extreme caution in its use. But surely the majority would not suggest that this "universally known latency" of risk obviates any obligation to warn.

The simplicity or complexity of a product is not controlling on a warning issue. The pertinent inquiry is whether a danger is latent. If a simple product can never in principle present an obvious risk to users, then the definition of "simple product" merely expresses the prejudgment that no latent risk inheres. But at that point the inquiry should focus on the basis for making that prejudgment.

The claim that there is nothing "enigmatic" about such pools is not accurate.[13] The plaintiffs presented evidence of properties inherent in a shallow aboveground pool that are indeed enigmatic and not observable upon casual inspection. The testimony of the expert witnesses negatives defendants' claims that the pools are comprised only of "universally known characteristics."[14]

Undeniably the shallowness of aboveground pools is readily apparent.[15] It does not follow that because the "condition creating that danger" is readily apparent, all dangers created by the obvious condition are readily apparent or "discoverable upon casual inspection."

---

[13] "[T]here is . . . nothing enigmatic about [their] properties. [They have] no mechanical devices, but rather [are] uncomplicated . . . product[s] with universally known characteristics." [*Ante,* p 399 (quoting GRIFFIN, J., in *Glittenberg I*).]

[14] See part I.

[15] The majority argues:

[T]here is no dispute that the aboveground pools are simple products. No one can mistake them for other than what they are, i.e., large containers of water that sit on the ground, all characteristics and features of which are readily apparent or easily discernible upon casual inspection. [*Ante,* p 399.]

The majority assumes that the bare observation of shallow water fully reveals all dangers inherent in shallow water. It is precisely plaintiffs' contention that at least some danger, the risk of quadriplegic injury, is not discoverable upon casual inspection of a shallow pool, and there is substantial evidence in the record supporting that contention.[16]

IV

At the heart of the majority's analysis is the assertion that there is no need to warn of a *specific* risk if the *general* risk is open and obvious. Since the general risk of diving in shallow waters is, according to the majority, open and obvious, it is of no importance that the specific risks of quadriplegia, paralysis and the consequences are not generally recognized.[17]

---

[16] See part I.

[17] The gravamen of each of the plaintiff's argument is that *the danger presented is not open and obvious because the specific harm of paralysis or death is not generally recognized. . . . However, the threshold issue is . . . whether people in general are unaware of the fact that there is a risk of serious harm when diving in shallow water.* The fact that all plaintiffs acknowledged the necessity to perform a shallow dive simply underscores the conclusion that the risk of diving in shallow water is open and obvious. [*Id.,* pp 400-401. Emphasis added.]

The majority also states that the plaintiffs

seek to convert the duty to warn argument *by conceding a readily apparent and generally recognized dangerous condition* for which no duty exists, while claiming that because a *specific consequence or degree of harm* from that dangerous condition, i.e., paralysis or death, *is not generally recognized* . . . . [*Id.,* pp 401-402. Emphasis added.]

The plaintiffs do not seek to evade the "duty analysis." Duty is not the issue. Inherent in the manufacturer—consumer relationship is the duty of reasonable care to avoid negligent conduct. Plaintiffs argue only that this duty includes the obligation to warn of a latent danger. The issue in the instant cases is whether the standard of care

Although the plaintiffs acknowledged that they knew diving in shallow pools was dangerous, they offered evidence to support their claim that they did not appreciate the risk of quadriplegic injury.

A

Under the analytical framework adopted by the majority, if there is an obvious *general* danger associated with using a product, the manufacturer does not have an obligation to warn of any latent *specific* risk in using the product. The obligation to warn of a risk in using a product does not, however, depend on whether the risk is "general" or "specific." The essential question respecting an obligation to warn is whether the risk complained of is obvious.

Failure to warn cases that consider the interplay of "patent," "latent," "general," and "specific" characteristics of product-related dangers present these issues in a variety of contexts.[18] But they

applicable to a manufacturer of aboveground swimming pools requires a warning about the risks of shallow diving and quadriplegia. As this Court stated in *Moning v Alfono,* 400 Mich 425, 438-439; 254 NW2d 759 (1977):

> Duty is essentially a question of whether the relationship between the actor and the injured person gives rise to any legal obligation. . . . It is well established that placing a product on the market creates the requisite relationship between a manufacturer . . . and persons affected by use of the product giving rise to a legal obligation or duty to the persons so affected.

As manufacturers of aboveground pools, defendants have a duty to make their products reasonably safe. Given the evidentiary record developed by the instant plaintiffs, we would not decide that standard of care issue as a matter of law. See part I.

See also *Riddle v McLouth Steel,* 440 Mich 85, 118-122; 485 NW2d 676 (1992) (LEVIN, J., dissenting) (distinction between "duty" and "standard of care").

[18] These cases treat the issues in the contexts of theories of negligence, strict liability, assumption of risk, incurred risk, defective

share a common thread: whether there is an obligation to warn depends on the latency of the *specific* risk, not the general risk. If there is a specific latent risk, there is an obligation to warn, even if there is a more general obvious risk. In numerous cases, courts have rejected claims that mirror the arguments adopted by the majority.

In *Hopkins v E I DuPont de Nemours & Co,* 199 F2d 930 (CA 3, 1952), a workman was killed by a dynamite explosion during an excavation project, and his widow brought a negligent failure to warn claim against the maker of the explosives. The United States Court of Appeals for the Third Circuit observed:

> Defendant tells us that *everybody knows that dynamite is dangerous and that there is no need to warn against the obvious.* But plaintiff's theory does not go to the *generally* dangerous character of dynamite. . . . Everybody knows that dynamite should not be thrown in a fire, but apparently most construction workers do not know that it should not be placed in a hole under the conditions existent in this case. [*Id.* at 933. Initial emphasis added.]

In *East Penn Mfg Co v Pineda,* 578 A2d 1113, 1122 (DC App, 1990), a mechanic was injured by a car battery that exploded. The manufacturer of the battery argued that the mechanic's experience had acquainted him with the particular risks associated with batteries, and thus there was no duty to warn of the dangers. The District of Columbia Court of Appeals held that the manufacturer had a duty to warn of the specific risk that the battery might explode during charging, even though the mechanic "clearly knew that a person should exer-

design, and adequacy of warning. The cases frequently combine two or more of these theories.

cise care around batteries because they produce explosive gases."

In *Whitehead v St Joe Lead Co,* 729 F2d 238 (CA 3, 1984), the plaintiff claimed that lead poisoning was caused by long-term exposure to lead in the plant owned by the defendant. The defendant argued that lead contamination was a generally known danger, and thus there was no duty to warn. The United States Court of Appeals for the Third Circuit responded:

> We cannot conclude that lead exposure in the workplace is a "generally known" risk requiring no warning as a matter of law. *Our concern is not with whether it is generally known that lead can be harmful if deliberately consumed. Rather, we consider whether safe exposure limits to airborne lead are generally known,* and whether it is generally known that these levels were exceeded in plants like Alpha's. [*Id.* at 254. Emphasis added.]

In *Haberly v Reardon Co,* 319 SW2d 859 (Mo, 1958), a boy helping his father paint, was blinded in one eye when cement-based paint accidentally lodged in his eye. The defendant paint manufacturer argued that there was no duty to warn of the specific danger of paint entering the eye because everyone knows that paint of any kind will cause problems if lodged in the eye. In rejecting this claim the Missouri Supreme Court said:

> It is certainly common knowledge . . . that foreign substances . . . should not be lodged in an eye. . . . [E]veryone knows that, generally speaking, a foreign substance in an eye . . . sometimes will result in pain and . . . possibly serious consequences. It does not follow . . . from the fact that such is common knowledge that a *specific warning* [of the tragic consequences of paint in the eye] would not alert one to act far differently than

otherwise he would have acted . . . . [*Id.* at 867. Emphasis added.]

In *Leonard v Uniroyal, Inc*, 765 F2d 560, 566 (CA 6, 1985), where one truckdriver was injured and another killed when an underinflated truck tire blew out, the plaintiff secured a favorable jury verdict on a claim that Uniroyal was negligent in failing to warn of the dangers of tire underinflation. Uniroyal argued that the jury should have been instructed that there was no duty to warn since truckdrivers generally knew of the dangers from underinflated tires. The United States Court of Appeals for the Sixth Circuit held that Uniroyal was not entitled to a "no duty" instruction since it produced no evidence to establish that danger from underinflated tires is common knowledge among professional truckdrivers.

In *Long v Deere & Co*, 238 Kan 766; 715 P2d 1023 (1986), a worker, injured when a "crawler loader" rolled over, claimed that the defendant should have warned of the necessity of wearing a seat belt while operating the loader. Deere argued that since the risks of not using seat belts are generally known, a warning would have been futile. The Kansas Supreme Court held that it could not say as matter of law that because of the common use of seat belts in passenger vehicles that the risks associated with the loader were commonly known, and that a warning would have been futile.

In *Brune v Brown Forman Corp*, 758 SW2d 827, 831 (Tex App, 1988), the Texas Court of Appeals reversed a summary judgment in favor of a liquor manufacturer in an action brought by a survivor after her daughter died from acute alcohol poisoning. In holding that the failure to warn claim was improperly dismissed, the court said:

[T]he fatal propensities of acute alcohol poisoning cannot be readily categorized as ordinary common knowledge. Although *there is no question that drinking alcoholic beverages will cause intoxication and possibly even cause illness is a matter of common knowledge, we are not prepared to hold, as a matter of law, that the general public is aware that the consumption of an excessive amount of alcohol can result in death.* We realize that there is no clear line between what is and is not common knowledge, but where facts, as shown by appellant's summary judgment proof, show how easily disputed the knowledge of the fatal propensities of alcohol may be, we will not recognize it as common knowledge as a matter of law. [Emphasis added.][19]

B

The majority further characterizes the plaintiff's claims regarding the specific risk of

[19] Other cases that tie a failure to warn claim to the awareness of a specific danger include *Rinehart v Int'l Playtex, Inc,* 688 F Supp 475 (SD Ind, 1988) (the risk of toxic shock syndrome is latent, not open and obvious, thus Playtex had a duty to warn of the particular risk; the incurred risk defense requires more than general awareness of a potential for mishap; it must show acceptance of a specific risk); *Shuput v Heublein Inc,* 511 F2d 1104, 1106 (CA 10, 1975) (the plaintiff was partially blinded after being hit in the eye by a plastic stopper that popped out from a champagne bottle; the court said "[t]he propensities of bubbly wine may be well known to many but are not a matter of such common knowledge as to be established as a matter of law and imposed as a matter of judicial knowledge"). Accord *Burke v Almaden Vineyards, Inc,* 86 Cal App 3d 768; 150 Cal Rptr 419 (1979).

The same thread runs through cases that present the issue in terms of whether the plaintiff "assumed the risk" of injury. *Cota v Harley Davidson,* 141 Ariz App 7; 684 P2d 888 (1984) (the plaintiff, injured in a motorcycle crash when a gas tank ruptured, claimed defective design; Harley raised an assumption of risk defense; the court held that Harley was not entitled to an instruction on assumption of risk because, although the plaintiff had general knowledge of the danger, there was no evidence that he had actual knowledge of the specific risk that a mirror bracket could puncture a tank at 20 to 30 mph).

The confluence between the warning and assumption of risk cases lies in the centrality of the issue of the obviousness of the danger that produced an injury.

quadriplegic injury as claims not about the danger presented by the pools, but, rather, only about the "specific consequences or degree of harm" from the danger.[20]

It would, indeed, be unreasonable, probably impossible, to require a manufacturer to warn consumers about every conceivable injury that might result from the use of a product, and the law assuredly does not impose such an obligation.[21] While we agree that there is no obligation to warn of a particular danger simply because it is "conceivable," the plaintiffs do not argue that there is an obligation to warn of all conceivable dangers associated with aboveground pools. The plaintiffs argue that there is a specific significant danger for which a warning should be supplied because that danger is latent, and a warning would reduce the number of occurrences of significant injury.

V

The majority states:

> Most jurisdictions that have addressed similar cases have been unwilling to impose liability on the pool manufacturer or seller.[22]

The results in the swimming pool cases, while consistent with the holding by the majority, are problematic. Closer examination reveals merely coincidental support for the result in the instant cases, and highlights the inadequacy of the approach taken by the majority.

---

[20] *Ante,* pp 401-402.

[21] [S]urely a manufacturer, to be protected from liability for negligence, need not enumerate the possible injuries which might befall one . . . . [*Jamieson v Woodward & Lothrop,* 101 US App DC 32, 39; 247 F2d 23 (1957).]

[22] *Ante,* p 386.

A

Several of the cases cited differ significantly from the instant cases in that they did not concern injuries resulting from shallow or "flat" dives into aboveground pools, but, rather, involved injuries sustained from vertical or "deep" dives.[23]

Because these cases did not involve the flat or shallow dives attempted by the instant plaintiffs, there was no expert testimony regarding the industry's awareness of the risk or danger of shallow diving, and that the public was unaware of that risk.[24]

B

The majority states that it eschews the proximate cause approach[25] in favor of "the more difficult duty analysis."[26]

---

[23] In *Kelsey v Muskin Inc,* 848 F2d 39 (CA 2, 1988), the plaintiff became quadriplegic after diving in an aboveground pool, headfirst with his arms at his side, from a height of *eight feet.* In *Howard v Poseidon Pools,* 72 NY2d 972; 530 NE2d 1280 (1988), the plaintiff was severely injured after attempting to dive headfirst through an inner tube that was floating in a shallow aboveground pool. In *Belling v Haugh's Pools, Ltd,* 126 AD2d 958, 959; 511 NYS2d 732 (1987), the plaintiff suffered serious injury after attempting what the court described as a "vertical dive" through an inner tube floating in a shallow pool.

[24] *Smith v Stark,* 103 AD2d 844; 478 NYS2d 353 (1984), involved a claim of negligent *design,* and the memorandum opinion does not indicate whether the alleged design defect resulted from the lack of a warning. Cf. *Colosimo v May Dep't Store Co,* 466 F2d 1234 (CA 3, 1972), involving a claim that the absence of a warning rendered the design of the pool defective.

[25] Summary judgment in favor of the defendant has been based on lack of a causal connection between the alleged negligent failure to warn and the plaintiff's injury. Courts typically focus on the plaintiff's deposition testimony . . . . From this, it is concluded that, because the plaintiff was aware of the shallow condition of the pool's water and the dangers inherent in a headfirst dive into observably shallow water, the absence of a warning conveying those very facts could not be a proximate cause of the plaintiff's injuries. [*Ante,* pp 386-387.]

[26] *Id.,* p 387.

As the majority notes,[27] courts that concluded
that a failure to warn could not have been a
proximate cause of a diving injury typically fo-
cused on the testimony presented by the plaintiffs
themselves.[28] The courts thus drew their conclu-
sions about the obviousness of the dangers pre-
sented by the pools without evidentiary records
comparable to those in the instant cases.[29]

Other courts, in deciding swimming pool cases,
implicitly concluded that a warning would not
have altered the conduct of the plaintiff. In con-
tradistinction to the instant cases, those courts
were not presented evidence supporting claims
that pool users generally are unaware of the risks
of shallow diving and catastrophic injury. To the
extent that the cited cases involved claims that
manufacturers should have given general warn-
ings about the dangers of diving, the claims are
inapposite to those now before this Court.

C

The assertion that swimming pool manufactur-
ers and sellers have not been held subject to
liability in similar cases by "[m]ost jurisdictions"[30]
is overstated.[31] Other jurisdictions have not uni-

---

[27] *Id.,* p 386.

[28] See cases cited in *id.,* p 392, n 15. The courts in two of the cases
held that the plaintiff's conduct, not the lack of a warning, was the
*sole* proximate cause of his injuries. See *Howard v Poseidon Pools,
Inc,* n 23 *supra* at 974; *Winant v Carefree Pools,* 709 F Supp 57, 62
(ED NY, 1989). This further reduces the persuasiveness of the cases,
since Michigan law recognizes that there may be more than one
proximate cause of an injury.

[29] See part I.

[30] *Ante,* p 386.

[31] The majority cites eleven cases from other jurisdictions that
involve diving accidents in aboveground pools. However, four of the
cases, *Winant,* n 28 *supra, Howard,* n 23 *supra, Belling,* n 23 *supra,*

formly responded to such claims.[32]

and *Smith*, n 24 *supra*, were decided under the law of a single jurisdiction, New York.

A variation on the swimming pool cases is found in *Griebler v Doughboy Recreational, Inc*, 160 Wis 2d 547, 560; 466 NW2d 897 (1991), where the Wisconsin Supreme Court held that diving in water of unknown depth presented a danger open and obvious as a matter of law. The plaintiff presented testimony from experts to the effect that the average consumer does not appreciate the risks of diving into water of unknown depth. The nature of the analysis is unclear, but the court appears to have looked at proximate cause instead of duty issues. The plaintiff apparently introduced expert testimony to support his argument that his conduct was not unreasonable.

The *Griebler* court grounded the result on two Wisconsin cases that represented "nearly twenty years of precedent," *id.* at 561, and seemed to imply that the plaintiff was guilty of contributory negligence:

> We refuse to overrule *Scheeler* [*v Bahr*, 41 Wis 2d 473; 164 NW2d 310 (1969),] and *Davenport* [*v Gillmore*, 146 Wis 2d 498; 431 NW2d 701 (1988),] and adopt the rule advanced by the court of appeals. Doing so would open the door to plaintiffs recovering for *injuries they suffered as the result of their own unreasonable behavior.*
>
> Although expert opinion may be relevant in determining what is an open and obvious danger, *the test is ultimately one of reasonableness.* [*Id.* at 559-560. Emphasis added.]

The court briefly discussed *Corbin v Coleco Industries, Inc*, 748 F2d 411, 417-418 (CA 7, 1984) but merely dismissed it:

> We have already rejected this position as a reason to overrule nearly twenty years of precedent. [160 Wis 2d 561.]

[32] *Stanton v Miller*, 66 Ohio App 3d 201, 204; 583 NE2d 1080 (1990), concerned a diver seriously injured after diving in an aboveground pool. The court reversed a grant of summary judgment in favor of the manufacturer and retailer, holding that diving in the pool did not constitute "primary assumption of the risk," and that the record did not demonstrate that the dive constituted even an "implied assumption of risk."

Although using the taxonomy of "assumption of risk," the holding of the court implicates duty to warn issues. The court distinguished "primary" and "implied" assumption of risk:

> [Primary assumption of risk] is predicated upon a determination, as a matter law, that the *defendant owes no duty to the plaintiff . . . because certain risks are so inherent in some activities that they cannot be eliminated.*

Implied assumption of risk is, on the other hand, defined as the plaintiff's consent to or acquiescence in an appreciated, known or obvious risk to the plaintiff's safety. [*Id.* at 203-204. Emphasis added.]

The court added:

"Clearly, there is a risk of injury while diving into a shallow pool. *The risk, however, is not so inherent as to relieve pool operators from any duty whatsoever* to all divers." [*Id.* at 204 (quoting *Collier v Northland Swim Club,* 35 Ohio App 3d 35; 518 NE2d 1226 [1987]). Emphasis added.]

By declining to find that the plaintiff's conduct constituted "primary assumption of risk," the court refused to find that the dangers of diving in an aboveground pool were so obvious as to preclude a duty to warn on the part of the manufacturer or retailer. Had the court found evidence sufficient to raise the issue of "implied" assumption of risk, the issue would ordinarily have gone to the jury. *Id.* at 203.

In *Erickson v Muskin Corp,* 180 Ill App 3d 117, 121-125; 535 NE2d 475 (1989), the court applied an "assumption of risk" analysis to a case concerning a diver who broke his neck after diving through an inner tube in an aboveground pool. The court affirmed a jury verdict finding both that defendant owed a duty to warn of the danger of diving into the pool, but that the plaintiff assumed ninety-six percent of the risk. The court said:

A subjective test [for whether the plaintiff assumed the risk] is used, i.e., what plaintiff actually knew. Plaintiff's age, experience, knowledge, and understanding, in addition to the *obviousness of the defect and the danger it poses will all be relevant factors for the jury's consideration.*

*       *       *

Moreover, plaintiff's use of expert testimony to show that the public may not be aware of the hazards of diving into an aboveground pool is not relevant to what Lance [Erickson] himself knew. Lance's knowledge, or lack thereof, and whether he had assumed all or part of the risk was a question of fact to be resolved by the jury. [Emphasis added.]

The duty to warn in this case was determined by an "objective standard." *Id.* at 122. The obviousness of the danger neither prevented the case from reaching a jury, nor did the jury's involvement produce a windfall for the plaintiff, whose recovery was reduced by ninety-six percent.

See also *King v S R Smith, Inc,* 578 So 2d 1285, 1287 (Ala, 1991) (reversing summary judgment in favor of a manufacturer who argued no duty to warn of the danger of diving from a diving board into an in-ground pool); "Whether a danger [is] 'open' and 'obvious' does not go to the issue of duty of the defendant . . . . Instead, 'open' and

In *Corbin v Coleco Industries, Inc,* 748 F2d 411 (CA 7, 1984), the United States Court of Appeals for the Seventh Circuit reversed a summary judgment on a negligent failure to warn claim granted defendant manufacturer. After reviewing the record of expert testimony, the court said:

> [E]ven though people are generally aware of the danger of diving into shallow water, they believe that there is a safe way to do it, namely, by executing a flat, shallow dive. If people do in fact generally hold such a belief, then it cannot be said, as a matter of law, that the risk of spinal injury from diving into shallow water is open and obvious. Whether a danger is open and obvious depends not just on what people can see with their eyes but also on what they know and believe about what they see. In particular, if people generally believe that there is a danger associated with the use of a product, but that there is a safe way to use it, any danger there may be in using the product in the way generally believed to be safe is not open and obvious.[33]

The result in *Corbin* is particularly persuasive. The *Corbin* court, like the majority in the instant cases, employed a "duty analysis,"[34] and focused on the testimony of experts as well as the plaintiff himself,[35] but reached a result contrary to that of

'obvious' danger relates to the affirmative defense of assumption of risk . . . and the issue of causation."

In *Shaw v Petersen,* 169 Ariz App 558; 821 P2d 220, 222 (1991), parents of a 19-month-old child who was injured after falling in a pool claimed the owner should have warned of danger of the pool. The Court said: "Whether a reasonable person would believe a pool was an open and obvious hazard to a 19 month old child is a question that relates to breach of duty, not its existence. Whether a hazard is 'open and obvious' is not relevant to determine the existence of duty, rather it is relevant to determining if the duty was breached."

[33] *Id.* at 417-418.

[34] *Id.* at 417.

[35] *Id.* at 418. The court also reversed the grant of summary judg-

the instant majority. The court did not find that the danger of diving in a shallow aboveground pool was open and obvious, but only that the plaintiff presented evidence "sufficient to preclude summary judgment . . . on the basis of the open and obvious defense."[36]

We would similarly so conclude that there is a genuine issue of material fact, and would remand these cases for trial.

CAVANAGH, C.J., concurred with LEVIN, J.

MALLETT, J. (*dissenting*). Although I concur in the majority's analysis, I dissent with regard to its conclusion. Because I do not consider the presented threat open and obvious, an aboveground pool manufacturer has a duty to warn.

Therefore, I respectfully dissent from my colleagues.

---

ment on the proximate cause issue based on plaintiff's knowledge of the danger.

[36] *Id.* at 417.